ACCEPTED
12-14-00253-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
11/20/2015 9:16:14 PM
Pam Estes
CLERK

**CASE NO.  12-14-00253-CV**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

11/20/2015 9:16:14 PM

PAM ESTES
Clerk

| | | |
|---|---|---|
| **JERRY WEAKS  and** | § | **IN THE COURT OF** |
| **JOYCE WEAKS,** | | **APPEALS FOR** |
| | | **TWELFTH COURT OF** |
| **APPELLANTS** | | **APPEALS  DISTRICT** |
| | | **OF TEXAS** |
| | § | |
| **V.** | | |
| | § | |
| **KATHLEEN JEANETTE** | | |
| **WHITE,** | § | |
| **APPELLEE** | § | |

## MOTION FOR  REHEARING

**TO THE HONORABLE COURT:**

COME NOW JERRY WEAKS and JOYCE WEAKS, Appellants in this cause, who hereby move the Court for a rehearing of the judgment of this Court rendered on October 21, 2015,  and in support of this motion respectfully show the following, to wit:

I.

1. Point of Error Number One: The Court of Appeals erred in affirming the trial court's judgment that the offset owed by Plaintiff/Appellee Kathleen Jeanette White ("White") was limited to the rental value of the property for the period from the time that White gave notice of her rescission of the contract through the date that White actually vacated the property.

2. Argument and authorities:

The Court of Appeals has made the same mistake that the trial court made in interpreting the offset recognized and required by our Texas Supreme Court in the determinative case of **Morton v. Nguyen,** 412 SW3rd 506 (Tex. 2013).  **Morton** also involved a similar case in which a purchaser under an executory contract for deed decided to rescind the contract under the provisions of Chapter 5, Subchapter D, of the Texas Property Code. The trial court in **Morton** awarded the purchaser, Nguyen, the refund of all payments made by Nguyen, plus the refund of the insurance and tax payments made by Nguyen.  That sum totaled over $63,000. The seller, Morton, appealed.

The Texas Supreme Court applied the common law provision that any such refund of the purchase money must be offset by the return of the benefit received by such purchaser, which in **Morton** and in a case like this, is the reasonable rental value of the premises subject to the contract. In **Morton**, the Texas Supreme Court reversed the judgment of the trial court and remanded the case for a determination of Nguyen's liability for the rental value of the premises so that such amount could be offset against the refund owed by Morton.

It appears that the Court of Appeals, like the trial court, has misinterpreted the holding in **Morton**  because of the wording of a particular statement to the effect that the "trial court did not consider the value of the Nguyens' interim occupation of the property …." **See Morton**, at 512.   However, the word "interim" does not merely refer to that period of time from the purchaser's giving notice of rescission to the date that the purchaser actually vacates the property. Rather, "interim" should be interpreted as the

total amount of time from the time that the purchaser <u>began the occupation</u> of the property until the purchaser actually vacated the property. A full reading of **Morton** makes this clear. Our Texas Supreme Court quotes from Black's Law Dictionary in holding that rescission by the purchaser must be "accompanied by restitution of any partial performance, thus <u>restoring the parties to their precontractual positions.</u>" **Morton**, at 510 (underline added). In such a rescission, each party is to "restore property received from the other." **Id**., at 510 and 511. "Allowing a buyer to recover all benefits bestowed upon the seller upon rescission without also requiring the buyer to surrender the benefits that he received under the contract would result in a windfall inconsistent with the general nature of Subchapter D's cancellation-and-rescission remedy. Rescission is not a one-way street. …[It] requires a mutual restoration and accounting." **Id.**, at 511.

After establishing that a purchaser must make restoration to the seller, the Texas Supreme Court goes on to specify that such restoration must take the form of the value of the purchaser's occupancy. The Court makes <u>no</u> directive that such restoration must only be the value of the purchaser's occupancy after giving notice of intent to rescind. On the contrary, the Court states that the purchaser must restore the full value of its occupancy, i.e., the value of the total time of the purchaser's occupancy. "Rescission is mutual: a plaintiff seeking to be restored to the status quo ante must likewise restore to the defendant whatever the plaintiff has received in the transaction. While the buyer remains entitled to 'a full refund of all payments made to the seller,' cancellation and rescission of a contract also requires that the buyer restore to the seller the value of the buyer's occupation of the property." **Id.**, at 512. Thus, there is no limitation of the buyer's restitution to the rental value of the occupancy occurring after the buyer gives notice of the intent to rescind.

To limit the seller's offset to the rental value of the much shorter time from the purchaser's rescission to the purchaser's vacating the property would fall far short of the common law right of offset contemplated and required by our Texas Supreme Court. Thus, this Court is urged to grant rehearing and review this issue, and to recognize the right of offset for the reasonable rental value of the total period of occupancy of the property by the purchaser.

II.

1.    Point of Error Number Two:  The Court of Appeals erred in failing to recognize the application of common law defenses to the statutory claims of White.

2.    Argument and authorities:

The Court of Appeals seems to recognize that common law defenses may be raised in regard to statutory remedies unless clearly negated by statute.  However, the Court of Appeals seems to rely heavily on the fact that there appears to be no mention of common law defenses or common law applications among the statutes in question in Subchapter D of the Texas Property Code.  The Court of Appeals thus seems to hold that, since there is no such mention,  then the legislature must not have intended for such defenses to be applicable.

However, as pointed out by Appellants in their original brief and in the above arguments, and as noted by this Court of Appeals, it is obvious that the Texas Supreme Court has recognized the application of certain common law principles.  The obvious example is that of the right of offset as provided and discussed in **Morton**. That certainly is a common law principle that is not mentioned either in the relevant provisions of the Texas Property Code. For such reasons, the Appellants again argue

that there is no less basis for recognizing the common law defenses such as estoppel or laches as there is for recognizing the common law right of offset. The Court of Appeals has argued that the application of the common law defense of estoppel could negate the remedy of rescission that is provided in Subchapter D. However, it is submitted that the occupancy of the property for over 10 years before the buyer invokes the rescission provision is, and will be, a rare case and an extreme situation. Thus, in such an extreme situation as is before this Court, it is submitted that the failure to recognize such common law defenses could also lead to an extremely harsh result. This is particularly disturbing since the failures of the seller under Subchapter D did not result in the purchaser actually suffering any real harm. Whether the defenses raised are termed "laches," or "statute of limitations," or "estoppel," an egregious situation such as that before this Court should warrant the applicability of such in order to avoid the extremely harsh result for the seller and the unmerited windfall of the buyer.

Thus, it is submitted that, since our Texas Supreme Court has certainly applied common law principles to the statutory remedies in question, the Court of Appeals should likewise recognize the applicability of common law defenses and remand the case for further hearing so that such defenses may be fully heard.

III.

1. Point of Error Number Three: The Court of Appeals erred in determining that the Appellants waived any objection to the granting of the full amount of attorney fees claimed by the attorney for Appellee White.

2. Argument and authorities:

The Court of Appeals actually agrees with the argument of Appellants that an

award of attorney fees for Appellee White's attorney should be limited only to a cause of action which provided for the recovery of attorney fees. In this case, the one cause of action that provided for a recovery of attorney fees was Section 5.077 of the Texas Property Code, which requires a seller to provide certain notices to the buyer under an executory contract for deed.  If the sellers failed to provide such notice, then the purchasers would be entitled to a statutory remedy of liquidated damages in the amount of $100 for each year in which the sellers failed to give such notice. In this case such liquidated damages amounted to $1000. Of the four sections of Subchapter D that White sued upon, this section is the only one that provided for the recovery of attorney fees. However, it is clear from the record that the hours worked and effort expended by White's attorney, and the dollar amount claimed by White's attorney, related to the total efforts expended by the attorney for all causes of action involved in this case.  It is clear that the trial court granted judgment for such total amount of attorney fees.  There was thus no segregation of the award of attorney fees to a cause of action which actually provided for such an award. The Court of Appeals has determined that the Appellants failed to file a timely objection to Appellee's request for an award of attorney fees and, thus, have waived any right to complain on appeal about the award.

However, the summary judgment granted by the trial court was <u>not</u> a final judgment. Rather, it was a <u>partial</u> summary judgment. In other words, this was merely an interlocutory judgment.  **See <u>Mower v. Boyer</u>**, 811 SW2d 560, 562 (Tex. 1991).  It was clear that there were other issues to be briefed and determined before any final, appealable judgment could be rendered. It is likewise clear that a

partial summary judgment, as an interlocutory judgment, can be modified and reformed, or withdrawn. **See Elder Construction, Inc., vs. Colleyville**, 839 SW2d 91. 92 (Tex. 1992).

The Court of Appeals is treating the partial summary judgment as a final judgment by holding that the Appellants waived any objection or defense to White's motion for summary judgment by failing to raise such objection in their initial response to White's motion. It is submitted that, even in the case of a final summary judgment, a party could raise a misinterpretation or misapplication of law as grounds for a post-judgment motion to reform the judgment or for a new trial. **See Harvey v. Alexander**, 671 SW3d 727, 729 (Tex. App.-Ft. Worth 1984-no writ). However, that is not the situation before this Court. Rather, the summary judgment in question is a partial summary judgment which can be reformed or withdrawn by the trial court at any time, whether by a party's motion or upon the court's own motion. **See Elder,** 839 SW2d at 92.

Thus, in the present case, the Appellants had the right to bring to the trial court's attention the error of law which the trial court had committed in awarding the full amount of attorney fees. The Appellants brought this to the trial court's attention by the filing of the motion to reconsider the court's prior findings and withdraw and reform the partial summary judgment. This motion was brought by the Appellants while the partial summary judgment could still be reformed. The trial court thus had plenty of opportunity to reform the partial summary judgment. Of course, the trial court ultimately overruled Appellant's motion and left its order granting attorney fees intact. However, Appellants had sought reform of the partial summary judgment in a timely manner and thus had not waived any

objection to it. Therefore, the trial court's ruling was properly preserved for appeal.

Since it is fundamental that attorney fees are not to be awarded unless they are clearly authorized by statute, then it follows that White was not entitled to a judgment for attorney fees as a matter of law, except as authorized by Section 5.077. The judgment for the attorney fees could have, and should have, been corrected at the trial court level after Appellants had made their motion for the reform of same and before the granting of a final, appealable judgment.

The cases cited by the Court of Appeals in support of its ruling are cases involving final summary judgments. One of such cases is **Green Int'l, Inc. v. Solis**, 951 SW2d 384 (Tex. 1997), which involved the submission of a jury question as to attorney fees. The jury question failed to segregate as to attorney fees and specific claims allowing for a recovery of attorney fees. Neither party objected to such jury submission. The Texas Supreme Court thus determined that any objection to the failure to segregate had been waived. **Id.,** at 389, 390. This case is thus definitely not on point with the situation described in the present case, and it should not be deemed to be determinative of the present case.

Likewise, the Court of Appeals cites the case of **Harvey v. Alexander,** 671 SW2d 727 (Tex. App.-Ft. Worth 1984-no writ) as authority that the allowance of a late filing of a response to a motion for summary judgment is entirely a matter of the trial court's discretion. The implication is that in the present case, the allowance or the denial of the filing of the Weaks' motion was a matter of the trial court's discretion, and the proper ground of appeal, if any, should be the abuse of the trial court's discretion. It is submitted, however, that such a principle may be

applicable in a case involving a summary judgment which will be a final, appealable judgment, but it is not applicable in the present case. In **Harvey**, the appellant attempted to raise issues on appeal as to certain affirmative defenses that were not timely raised in the trial court. The judgment granted in the trial court was a final judgment. The appellate court noted that if the appellant tried to raise such defenses in a late-filed objection (in **Harvey**, a day before the hearing on the summary judgment), and the trial court, in its discretion, did not allow the filing, then such defensive issues could not be maintained on appeal. **See Harvey,** at 729. Obviously, the Harvey case involved late-filed pleadings related to a final summary judgment. That is very different from the present case. In the present case, the partial summary judgment is absolutely not final and is subject to being amended or even withdrawn. **See Elder**. The holding in the **Harvey** case is in no way determinative of the present case.

WHEREFORE, the Appellants request that this Court grant this motion, and upon rehearing this matter, that the judgment of the trial court be reversed and rendered, or as applicable, remanded for further proceedings, as originally requested by Appellants.

Respectfully submitted,

/s/ Aubrey L. Jones, Jr.

_____
Aubrey L. Jones, Jr.
Attorney at Law
State Bar No. 10859100
P.O. Box 168
106 W. Tyler St.
Athens, Texas 75751
Telephone: (903) 675-7990

Fax: (903) 670-3424
Email: aubreyjoneslaw@embarqmail.com

ATTORNEY FOR APPELLANTS

## **<u>CERTIFICATE OF SERVICE</u>**

This will certify that a true and correct copy of the above Appellants' motion for rehearing has been served on Appellee's attorney of record, Ms. Jane Parreiras-Horta, in accordance with the Texas Rules of Appellate Procedure.

Signed this 20th day of November, 2015.

/s/ Aubrey L. Jones, Jr.

_____

Aubrey L. Jones, Jr.